No. 26-10078

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

MARIA ANTONIETA GALDAMES BURCE,

*Plaintiff – Appellant,*

v.

PORTFOLIO RECOVERY ASSOCIATES, LLC,

*Defendant – Appellee.*

Appeal from the United Stated District Court
for the Southern District of Florida

No. 0:24-cv-61681-WPD

---

# OPENING BRIEF OF
# PLAINTIFF-APPELLANT MARIA ANTONIETA GALDAMES BURCE

---

Dated February 18, 2026:

*/s/ Tarek N. Chami*
Tarek N. Chami
**CONSUMER JUSTICE LAW FIRM**
835 Mason St, Suite C349
Dearborn, MI 48124
T: (313) 447-0488
E: tchami@consumerjustice.com

Catherine Tillman, FL #0057663
**CONSUMER JUSTICE LAW FIRM**
8095 N. 85th Way
Scottsdale, Arizona 85258

1

T: (941) 263-7310
E: ctillman@consumerjustice.com

*Attorneys for Plaintiff-Appellant*
*Maria Antonieta Galdames Burce*

## CERTIFICATE OF INTERESTED PERSONS
## <u>AND CORPORATE DISCLOSURE STATEMENT</u>

Plaintiff-Appellant Maria Antonieta Galdames Burce ("Plaintiff"), by and through the undersigned counsel, and pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, hereby files this Certificate of Interested Persons and Corporate Disclosure Statement. Plaintiff is not a publicly held corporation and has no parent corporations, affiliates, or subsidiaries with an interest in the outcome of this case. Identifiable interested parties to the action are:

| | |
|---|---|
| Maria Antonieta Galdames Burce | Plaintiff-Appellant |
| Tarek N. Chami | Counsel for Plaintiff |
| Catherine Tillman | Counsel for Plaintiff |
| Portfolio Recovery Associates, LLC | Defendant-Appellee |
| Robert E. Sickles | Counsel for Defendant Experian |

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiff-Appellant Maria Antonieta Galdames Burce ("Plaintiff") respectfully requests oral argument. This appeal arises from the district court's errors in granting summary judgment to Defendant-Appellee Portfolio Recover Associates, LLC ("PRA") on Plaintiff's claims against under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"). Because those errors pertain to issues about Plaintiff's burden of pleading and proof and about the statutorily defined duties imposed upon debt collectors by the FDCPA, and because those issues implicate elements of a well-developed summary judgment record, Plaintiff suggests that oral argument may assist the Court in resolving those issues.

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................7

**JURISDICTIONAL STATEMENT** ...................................................9

**INTRODUCTION** ..........................................................................10

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW** .....................13

**STATEMENT OF THE CASE** .........................................................14

   I.   **Factual Background** ............................................................14

   II.   **Procedural Background** ......................................................16

      A.  *Plaintiff's Claims Against PRA.* .................................16

      B.  *The Parties' Motions for Summary Judgment* ...........17

      C.  *The District Court's Decision to Deny Plaintiff's Motion and Grant Summary Judgment to PRA.* ..............................20

      D.  *Standard of Review* ..................................................22

**SUMMARY OF ARGUMENT** .........................................................24

**ARGUMENT** ..............................................................................26

   I.   **The district court erred in concluding that Plaintiff had only alleged claims under § 1692c and that allegations pertaining to other sections of the FDCPA could not be considered in connection with the parties' cross motions for summary judgment. Plaintiff's allegations established the factual basis for claims under other sections of the FDCPA, and those allegations were enough to put PRA on notice of the nature and substance of Plaintiff's legal theories.** ................................26

   II.   **The district court erred in concluding that Plaintiff lacked sufficient evidence to permit a reasonable jury to find that PRA's conduct violated § 1692d, § 1692e, and/or § 1692f because PRA engaged in the kind of conduct prohibited by those sections when it repeatedly tried to collect from Plaintiff after learning that her association with the Synchrony Account was the product of identity theft.** ...................36

A.  *The Synchrony Account was a consumer debt for the purposes of the FDCPA.* ........................................................................................37

B.  *PRA is a debt collector within the meaning of the FDCPA.* ......................42

C.  *The evidence and the undisputed facts are sufficient to show that PRA engaged in prohibited conduct in connection with the Synchrony Account.* ....42

**CONCLUSION AND RELIEF REQUESTED** ..................................................48

## TABLE OF AUTHORITIES

**Cases**

*Acosta v. Campbell*, 309 F. App'x 315 (11th Cir. 2009) ........................................31

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)...........................................23

*Bishop v. I.C. Sys., Inc.*, 713 F.Supp.2d 1361 (M.D. Fla. 2010) ...........................22

*Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067 (9th Cir.1992)...........................................38

*Brown v. City of Clewiston*, 848 F.2d 1534 (11th Cir. 1988) .................................23

*Brown v. Credit Mgmt., LP*, 131 F. Supp. 3d 1332 (N.D. Ga. 2015) .............. 11, 45

*Buford v. Life Storage, LP*, No. 20-10505, 2021 WL 3720044 (11th Cir. Aug. 23, 2021) .................................................................................................................21

*Carlson v. FedEx Ground Package Sys., Inc.*, 787 F.3d 1313 (11th Cir. 2015) .....22

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ......................................................23

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991)................................23

*Conboy v. United States Small Bus. Admin.*, 992 F.3d 153 (3d Cir. 2021).............37

*Conley v. Gibson*, 355 U.S. 41 (1957))............................................................ 26, 27

*Dunn v. Ewell (In re Santa Fe Downs)*, 611 F.2d 815 (10th Cir. 1980).......... 21, 34

*Goodin v. Bank of America, N.A.*, 114 F. Supp. 3d 1197 (M.D. Fla. 2015)...........31

*Gostony v. Diem Corp.*, 320 F. Supp. 2d 932 (D. Ariz. 2003) .................. 11, 47, 48

*Green Country Food Mkt., Inc. v. Bottling Grp., LLC*, 371 F.3d 1275 (10th Cir. 2004) ............................................................................................ 33, 34, 35, 36

*Hansen v. Ticket Track, Inc.*, 280 F.Supp.2d 1196 (W.D.Wash. July 21, 2003) .. 39, 40

*Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367 (11th Cir. 1998) ...................38

*Hepsen v. J.C. Christensen & Assocs., Inc.*, No. 8:07–cv–1935, 2009 WL 3064865 (M.D.Fla. Sept. 22, 2009).......................................................................... 38, 40

*Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir.1985) .......................... 10, 44

*Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014) ......................................................................... 28, 29

*Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355 (S.D. Fla. 2000)...........................31

*Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296 (S.D. Fla. 2016).. 38, 40, 41

*Meadows v. Franklin Collection Serv., Inc.*, 414 F. App'x 230 (11th Cir. 2011) . 10, 11, 44, 46

*Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833 (11th Cir. 2010)............................ 39, 40

*Parham v. Seattle Serv. Bureau, Inc.*, 656 F. App'x 474 (11th Cir. 2016).............38

*Saintil v. Snap Recovery, Inc.*, No. 0:24-60933-CIV, 2025 WL 3553605 (S.D. Fla. Oct. 7, 2025) ........................................................................................ 21, 35

*Skinner v. Switzer*,
562 U.S. 521 (2011) .................................................................. 28, 29

*Smith v. ARS Nat. Servs. Inc.*, 102 F. Supp. 3d 1276 (M.D. Fla. 2015) ..... 22, 31, 37

*Staub v. Harris*, 626 F.2d 275 (3d Cir. 1980) ........................................ 37

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ............................ 26, 27

*White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188 (11th Cir. 2015) ..... 27, 28

**Statutes**

15 U.S.C. § 1681 .......................................................................... 9,16

15 U.S.C. § 1681p ............................................................................ 9

15 U.S.C. § 1681s-2(b) .................................................................... 17

15 U.S.C. § 1692 ..................................................................... passim

15 U.S.C. § 1692a(5) ...................................................................... 38

15 U.S.C. § 1692a(6) ...................................................................... 42

15 U.S.C. § 1692c .................................................................... passim

15 U.S.C. § 1692d .................................................................... passim

15 U.S.C. § 1692e .................................................................... passim

15 U.S.C. § 1692f .................................................................... passim

15 U.S.C. § 1692k(d) ........................................................................ 9

28 U.S.C. § 1291 .............................................................................. 9

28 U.S.C. § 1331 .............................................................................. 9

29 U.S.C. § 2601 ............................................................................ 28

79 Okla. Stat. § 203 ........................................................................ 33

79 Okla. Stat. § 205 ........................................................................ 33

**Rules**

Fed. R. App. P. 4(a)(1)(A) ................................................................. 9

Fed. R. Civ. P. 56 ........................................................................... 22

Fed. R. Civ. P. 9(b) ........................................................................ 26

**Regulations**

12 C.F.R. § 1006.34 ........................................................................ 35

# JURISDICTIONAL STATEMENT

In the district court, Plaintiff's complaint asserted causes of action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA") and Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA"), against fifteen defendants, including PRA. Consequently, the district court had jurisdiction of this case under 15 U.S.C. § 1692k(d), 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

As the district court noted in its dispositive order, fourteen of the fifteen defendants were dismissed from the case, leaving PRA as the sole defendant. *See* Order Granting Defendant Portfolio Recovery Associates, LLC's Motion for Summary Judgment [Dkt. No. 166] ("Summary Judgment Order") at 1 (noting that the non-PRA defendants were dismissed through stipulations and/or notices in Dkt. Nos. 73, 86, 90, 101, 112, 120, 125, 127, 128, 129, and 132).

The district court granted PRA's motion for summary judgment. Summary Judgment Order [Dkt. No. 166]. On December 9, 2025, the district court entered a Final Judgment and Order Closing Case [Dkt. No. 167], which disposed of all of the claims and rights of all of the parties.

Plaintiff filed her Notice of Appeal [Dkt. No. 168] in the district court on January 9, 2026, making it timely under Fed. R. App. P. 4(a)(1)(A).

Because Plaintiff timely appealed from a final order of the district court, this Court has jurisdiction under 28 U.S.C. § 1291.

# INTRODUCTION

The Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") prohibits a wide range of unfair, harassing, deceptive, or otherwise oppressive debt collection practices. This Court has repeatedly held that this broad prohibition was "meant to ensure that 'every individual, whether or not he owes the debt, has a right to be treated in a reasonable or civil manner.'" *Meadows v. Franklin Collection Serv., Inc.*, 414 F. App'x 230, 233 (11th Cir. 2011) (quoting *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1178 (11th Cir.1985)). Moreover, when courts assess whether a particular debt collection practice falls into one of the FDCPA's prohibited categories, the allegations and evidence "should be viewed from the perspective of a consumer whose circumstances makes [sic] him relatively more susceptible to harassment, oppression, or abuse." *Jeter*, 760 F.2d at 1179. And this Court has cautioned that "[o]rdinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury." *Id*.

In this case, Plaintiff-Appellant Maria Antonieta Galdames Burce ("Plaintiff") was the victim of an extensive scheme of identity theft in which her personal information was used by someone else to create numerous credit accounts, including one account that was assigned for collection to Defendant-Appellee Portfolio Recover Associates, LLC ("PRA"). When PRA contacted Plaintiff to collect on that account, she informed PRA's representative about the identity theft, emphasizing

10

that she was not responsible for the debt because she was not the person who had opened that account. Nevertheless, even though Plaintiff had unequivocally disclaimed any obligation for that account, PRA continued its collection efforts. Courts have held that a debt collector engages in prohibited collection activity when it persistently tries to collect a debt that it knows that the consumer's liability for the debt has not been established or when it knows that the consumer is simply unable or unwilling to pay. *See, e.g., Meadows*, 414 F. App'x at 234; *Brown v. Credit Mgmt., LP*, 131 F. Supp. 3d 1332 (N.D. Ga. 2015); *Gostony v. Diem Corp.*, 320 F. Supp. 2d 932 (D. Ariz. 2003).

Despite these fundamental principles regarding the FDCPA, and despite the clarity of the undisputed facts about PRA's conduct, the district court granted summary judgment to PRA, concluding that no reasonable jury could find that its conduct was in any way harassing, oppressive, deceptive, or otherwise unfair. To reach this conclusion, the district court chose to disregard the import of the undisputed facts because it thought that Plaintiff's Complaint lacked sufficiently specific pinpoint citations to subsections of the FDCPA. It also engaged in a cursory assessment of the undisputed facts, determining that PRA's collection efforts were necessarily benign because it made a relatively modest number of collection calls. But in reaching these conclusions, the district court overlooked this Court's admonitions about the foundational purpose of the FDCPA, especially with respect

to the principle that questions about the nature of a debt collector's conduct should be viewed from the perspective of the consumer.

Because PRA persisted in its collection efforts when it knew or should have known that Plaintiff was the victim of identity theft and that she completely disclaimed any liability for that debt, a jury could find that it engaged in conduct that was oppressive, harassing, deceptive, misleading, or just plain unfair. Accordingly, the district court erred in denying Plaintiff's motion for partial summary judgment and in granting PRA's cross-motion for summary judgment. Plaintiff asks this Court to reverse and/or vacate the district court's summary judgment order and rule that, at the very least, Plaintiff has presented jury questions about whether PRA's conduct violates the FDCPA.

**<u>STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>**

I.     Did the district court err in concluding that Plaintiff had only alleged claims under § 1692c and that allegations pertaining to other sections of the FDCPA could not be considered in connection with the parties' cross motions for summary judgment because Plaintiff's allegations established the factual basis for claims under other sections of the FDCPA, and those allegations were enough to put PRA on notice of the nature and substance of Plaintiff's legal theories.

II.    Did the district court err in concluding that Plaintiff lacked sufficient evidence to permit a reasonable jury to find that PRA's conduct violated § 1692d or § 1692e , or § 1692f because PRA engaged in the kind of conduct prohibited by those sections when it repeatedly tried to collect from Plaintiff after learning that her association with the Synchrony Account was the product of identity theft.

# STATEMENT OF THE CASE

## I.  Factual Background

Plaintiff resided in Chile until 1984, when she emigrated to the United States at the age of eighteen. Plaintiff's Statement of Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment [Dkt. No. 148] ("Plaintiff's SMF") at ¶ 3; Defendant's Opposition to Plaintiff's Statement of Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment [Dkt. No. 159] ("PRA's Responsive SMF") at ¶ 3. In 1988, Plaintiff married Nelson Valdes, but they separated in 1997, and Plaintiff returned to Chile. Plaintiff's divorce from Mr. Valdes was final in 2005. Plaintiff's SMF at ¶¶ 4-5; PRA's Responsive SMF at ¶¶ 4-5. Mr. Valdes remarried a few years later. *See* Plaintiff's SMF at ¶ 9; PRA's Responsive SMF at ¶ 9.

Between 2016 and 2017, Plaintiff frequently visited her mother in the United States, and, in 2020, Plaintiff began the process of becoming a United States citizen. Plaintiff's SMF at ¶¶ 6-7; PRA's Responsive SMF at ¶¶ 6-7. During that process, she became aware that there were problems with her credit. *Id*. In particular, Plaintiff noticed that the name of her ex-husband's current wife, Luz Maria Vales, was on Plaintiff's credit report, which included numerous accounts that did not belong to her. Plaintiff's SMF at ¶¶ 9-10; PRA's Responsive SMF at ¶¶ 9-10. One of the accounts related to a loan issued by Synchrony Bank ("the Synchrony Account"),

and it had an outstanding balance of approximately $9,000.00. Plaintiff's SMF at ¶ 14; PRA's Responsive SMF at ¶ 14. PRA, which is a debt collector, had the authority to collect the outstanding balance on that account. *See id*.

Plaintiff suspected that she had been the victim of identity theft, and she filed a police report with the Police Department in Plantation, Florida, as well as an Identity Theft Report with the Federal Trade Commission ("FTC"). Plaintiff's SMF at ¶¶ 11-12; PRA's Responsive SMF at ¶¶ 11-12. In her FTC report, Plaintiff specifically mentioned that she suspected Mr. Valdes and his current wife of opening accounts by using Plaintiff's personal information. Plaintiff's SMF at ¶ 13; PRA's Responsive SMF at ¶ 13.

On April 5, 2023, PRA contacted Plaintiff in an attempt to collect the amount owed on the Synchrony Account. Plaintiff's SMF at ¶¶ 14-15; PRA's Responsive SMF at ¶¶ 14-15. Plaintiff informed PRA the Synchrony Account did not belong to her and was the product of identity theft. *See id*.

On April 17, 2023, PRA contacted Plaintiff a second time, seeking to collect on the Synchrony Account. Plaintiff's SMF at ¶¶ 16-17; PRA's Responsive SMF at ¶¶ 16-17. As she did in response to PRA's first call, Plaintiff notified PRA that Synchrony Bank account did not belong to her. *Id*. Nevertheless, PRA continued to contact Plaintiff in an effort to collect the amount owed on the Synchrony Account. *See* Plaintiff's SMF at ¶ 18; PRA's Responsive SMF at ¶ 18. PRA has denied that its

phone calls to Plaintiff were harassing, but it has never denied that it made numerous collection calls to Plaintiff after Plaintiff had twice disclaimed any personal connection to or liability for the Synchrony Account. *See* PRA's Responsive SMF at ¶ 18; *see also* Summary Judgment Order [Dkt. No. 166] at 2 & n.1 (noting that PRA has not denied making numerous collection calls after April 17, 2023).

## II.     Procedural Background

### A.     *Plaintiff's Claims Against PRA.*

After learning about the issues with her credit report, Plaintiff concluded that, because of the identity theft, the national consumer reporting agencies ("CRAs") and numerous creditors who furnish information to the CRAs ("furnishers") all wrongfully associated her with multiple credit accounts that did not belong to her, thereby damaging her creditworthiness. *See, generally*, Complaint [Dkt. No. 1]. Moreover, she concluded that she had been wrongfully subjected to numerous collection efforts by debt collectors in connection with accounts for which she had no responsibility. *Id*. To obtain relief for this wrongdoing, Plaintiff initiated this action, asserting claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA") and Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA"), against fifteen defendants, including the national CRAs and multiple creditors and debt collectors, including PRA. *Id*. Plaintiff's claims against PRA arose from causes of action under both the FCRA and FDCPA. Plaintiff's FCRA claim

arose from 15 U.S.C. § 1681s-2(b), which requires furnishers to conduct investigations and correct inaccuracies when consumers dispute the information that they provide to CRAs. Complaint at ¶¶ 245-52. Plaintiff's FDCPA claim arose from different sections of 15 U.S.C. § 1692, which regulates the collection activities that debt collectors can employ when attempting to collect a debt. *Id*. at ¶¶ 253-60. Plaintiff eventually settled and dismissed her claims against fourteen of the fifteen defendants, leaving PRA as the only remaining defendant.

B.     *The Parties' Motions for Summary Judgment*

Plaintiff filed a motion for partial summary judgment, arguing that she was entitled to judgment as a matter of law on the question whether PRA was liable for a violation of the FDCPA, specifically with respect to the requirements imposed upon debt collectors by 15 U.S.C. § 1692d and 15 U.S.C. § 1692e. Plaintiff's Motion for Partial Summary Judgment Regarding Liability [Dkt. No. 147]. Plaintiff pointed out that § 1692d prohibits debt collectors from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt;" and she noted that, in general, § 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id*. at 7. Plaintiff argued that PRA's own admissions showed that PRA had done nothing to confirm that Plaintiff actually was responsible for the Synchrony Account after Plaintiff informed PRA that the

account was the product of identity theft. *Id*. Plaintiff contended that, after learning about the identity theft, PRA's continued collection efforts were harassing, oppressive, deceptive and/or unfair in violation of the FDCPA, especially § 1692d and § 1692e. *Id*.

PRA filed its own cross-motion for summary judgment and opposed Plaintiff's motion for partial summary judgment, asserting three arguments for why Plaintiff's claims failed as a matter of law. PRA's Amended Motion for Summary Judgment [Dkt. No. 142] ("PRA's Summary Judgment Motion"); see also PRA's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment [Dkt. No. 158]. First, with respect to Plaintiff's FDCPA claim, PRA argued that Plaintiff could not prove that any collection efforts in connection with the Synchrony Account were subject to the FDCPA because Plaintiff could not conclusively prove that the account was for a consumer debt. *Id*. at 5-9. Second, PRA argued that Plaintiff could not prevail on any claim under 15 U.S.C. § 1692 because her Complaint only referenced one section of the FDCPA, 15 U.S.C. § 1692c, and because Plaintiff could not prove one of the factual prerequisites for a cause of action under § 1692c – that the plaintiff had provided the debt collector with written notice that she refused to pay the debt. In this connection, PRA argued that Plaintiff had no evidence that she had ever sent PRA any kind of written notice, and, in fact, had admitted that she failed to provide such notice. PRA's Summary Judgment Motion at 9-14. Third, PRA

argued that Plaintiff could not prevail on her claim under the FCRA, because §
1681s-2(b) provides that a furnisher can be liable for not properly investigating a
consumer dispute only when the consumer submits that dispute to a CRA, which
then notifies the furnisher of that dispute. PRA maintained that Plaintiff had admitted
that PRA had never received any disputes from any CRA. PRA's Summary Judgment
Motion at 14-16.

In response to PRA's motion, Plaintiff rebutted PRA's first two arguments.
Plaintiff's Response in Opposition to PRA's Motion for Summary Judgment [Dkt.
No. 154] ("Plaintiff's Opposition"). With respect to the question whether the
Synchrony Account involved a consumer debt, Plaintiff pointed to record evidence
showing conclusively that the account did involve a consumer debt. *Id*. at 4-7. With
respect to her allegations relating to 15 U.S.C. § 1692, Plaintiff pointed out that she
alleged facts and had evidence to prove that PRA's collection efforts had been
harassing and/or deceptive and misleading within the meaning of the FDCPA,
especially because those collection efforts had continued even after telephone
conversations where Plaintiff made it clear to PRA's representatives that the
Synchrony Account did not belong to her. Plaintiff's Opposition at 7-9. In this
connection, Plaintiff emphasized that the question of whether certain conduct counts
as harassment or as deceptive under the FDCPA is typically a question reserved for
juries. *Id*. at 9.

C.  *The District Court's Decision to Deny Plaintiff's Motion and Grant Summary Judgment to PRA.*

The district court decided the parties' cross-motions for summary judgment in a single order and opinion. Summary Judgment Order [Dkt. No. 166]. The district court began its assessment of the facts and evidence by concluding that there was no dispute that, when PRA first contacted Plaintiff about the account on April 5, 2023, "Plaintiff informed PRA she was the victim of identity fraud and that the debt did not properly belong to her." *Id*. at 2 (citing Plaintiff's SMF at ¶ 15; PRA's Responsive SMF at ¶ 15). The district court also concluded that there was no dispute that PRA persisted in calling Plaintiff and in continuing to make collection efforts even after its telephone conversations with Plaintiff made it clear that the Synchrony Account did not belong to her because it was the product of identity theft. *Id*. at 2 and n.1.

With respect to Plaintiff's motion for partial summary judgment, the district court pointed out that Plaintiff's Complaint mentioned the FDCPA generally and only referenced § 1692c by name, without specifically citing § 1692d or § 1692e. The district court then concluded that Plaintiff could not prevail on causes of action under either § 1692d or § 1692e because it was improper for Plaintiff to rely upon those two sections for the first time at the summary judgment stage. Summary Judgment Order at 4-5. "The Complaint cannot be fairly read to allege counts under §§ 1692d-e, especially where the Complaint specifically names a different

subsection. *Id*. at 6 (citing *Saintil v. Snap Recovery, Inc.*, No. 0:24-60933-CIV, 2025 WL 3553605, at *2 (S.D. Fla. Oct. 7, 2025)). In this connection, the district court emphasized that:

> Plaintiff must properly cite the subsection under which her claim is brought, "[n]otwithstanding the [new] claims' relations to any claims raised in [Plaintiff's] initial complaint." *Buford v. Life Storage, LP*, No. 20-10505, 2021 WL 3720044, at *4 (11th Cir. Aug. 23, 2021). An "incorrect statutory citation" is not an "unimportant detail" that can be "implicitly corrected by the facts alleged in the complaint." *Dunn v. Ewell (In re Santa Fe Downs)*, 611 F.2d 815, 816 (10th Cir. 1980).

*Id*. at 7.

After holding that Plaintiff had not adequately asserted causes of action under either § 1692d or § 1692e, the district court also concluded that, even if Plaintiff had done so, she could not prove claims under those sections as a matter of law. Summary Judgment Order at 8-9. In the district court's view, no reasonable jury could find that PRA's conduct was harassing simply because PRA made multiple collection efforts over a period of several months.

Having concluded that Plaintiff could not maintain causes of action under § 1692d or § 1692e, it then considered whether PRA was entitled to summary judgment because Plaintiff could not maintain a claim under § 1692c. Summary Judgment Order at 11. With respect to this issue, the district court noted that "Plaintiff must establish that she notified PRA in writing that she was refusing to

pay the account or that she requested PRA cease and desist communicating with her." *Id*. (citing 15 U.S.C. § 1692c(c), *Smith v. ARS Nat. Servs. Inc*., 102 F. Supp. 3d 1276, 1278 (M.D. Fla. 2015), and *Bishop v. I.C. Sys., Inc*., 713 F.Supp.2d 1361, 1367 (M.D. Fla. 2010)). Because it determined that Plaintiff could not prove that she did provide the necessary written notice, it concluded that PRA was entitled to summary judgment on any claim arising under § 1692c. And because the district court had previously concluded that Plaintiff's only possible FDCPA claim arose under § 1692c, it then concluded that PRA was entitled to summary judgment on any and all FDCPA claims. *Id*.

Finally, the district court noted that Plaintiff had not contested PRA's arguments about its cause of action under § 1681s-2(b) of the FCRA. Summary Judgment Order at 9-10. Consequently, the district court also granted summary judgment to PRA on that cause of action as well. *Id*.

D.     *Standard of Review*

This Court conducts a de novo review of a district court's ruling on a Motion for Summary Judgment under Fed. R. Civ. P. 56. *Carlson v. FedEx Ground Package Sys., Inc*., 787 F.3d 1313, 1317-18 (11th Cir. 2015)

Fed. R. Civ. P. 56(c) provides that a court may grant a motion for summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." The moving party bears the initial

burden of showing that no genuine issues of material fact exist in light of the pleadings, evidence produced in discovery, and affidavits submitted by the parties. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). Similarly, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material and which are irrelevant. *Id*.

In determining whether the parties have met their respective burdens, the court must "view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254. The court must refrain from weighing the evidence and making assessments of credibility, and, if the evidence permits inferences, the court must give the benefit of every reasonable inference to the nonmoving party. *Id*. at 255; *see also Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

# SUMMARY OF ARGUMENT

The district court primarily erred by applying an improper and excessively exacting pleading standard to determine that Plaintiff failed to allege any causes of action under the FDCPA, except for a cause of action under § 1692c. Contrary to the district court's conclusion, plaintiffs are not required to draft their complaints to include a pinpoint statutory citation for every conceivably applicable statutory cause of action. Plaintiffs can sufficiently set forth a statutory cause of action by identifying the relevant statute and alleging the operative facts that would give rise to different causes of action under that statute. Because Plaintiff met this standard here, the district court erred in ruling that her only possible cause of action under the FDCPA came from 15 U.S.C. § 1692c.

Although the district court concluded that Plaintiff had failed to sufficiently allege causes of action under either 15 U.S.C. § 1692d or 15 U.S.C. § 1692e, it went on to address whether "the facts here fall into the prohibited conduct under 15 U.S.C. §§ 1692d-e." Summary Judgment Order [Dkt. No. 166] at 8. The district court concluded that Plaintiff had not done enough to show that PRA engaged in any prohibited conduct, and this conclusion depended entirely on the district court's determination that "contact[ing] Plaintiff at least seven times after being notified that Plaintiff was a victim of identity fraud does not by itself amount to an intent to harass under 15 U.S.C. §§ 1692d or e." *Id*. This determination was erroneous because the

undisputed facts about PRA's conduct are enough to create a jury question about whether PRA engaged in the kind of harassing or oppressive conduct that violates § 1692d, the deceptive conduct that violates § 1692e, and/or the unfair conduct that violates 15 U.S.C. § 1692f. In particular, the summary judgment record leaves no doubt that PRA continued its efforts to obtain payments from Plaintiff for the Synchrony Account even after it had been informed that the account was the product of identity theft.

# ARGUMENT

I.   **The district court erred in concluding that Plaintiff had only alleged claims under § 1692c and that allegations pertaining to other sections of the FDCPA could not be considered in connection with the parties' cross motions for summary judgment. Plaintiff's allegations established the factual basis for claims under other sections of the FDCPA, and those allegations were enough to put PRA on notice of the nature and substance of Plaintiff's legal theories.**

A plaintiff sufficiently sets forth a claim or cause of action when her complaint alleges the facts necessary to prove that claim and when the complaint includes enough other information to provide the defendant with general notice of the claim or cause of action. Through Rule 8(a), the Federal Rules of Civil Procedure impose a "simplified pleading standard" for "all civil actions," with the limited exception of actions that are narrowly defined in Fed. R. Civ. P. 9(b). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). According to this standard, "a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

This liberal pleading standard establishes that, in determining whether and when a complaint sets forth any claim or cause of action, the crucial question is whether the factual allegations in the complaint "define the disputed facts and

issues" that would be relevant to such a claim or cause of action. *Swierkiewicz*, 534 U.S. at 512. A complaint can adequately set forth a claim or cause of action even if it does not recite certain magic words or expressly invoke every potentially relevant legal theory. *Id.*; *see also Conley*, 355 U.S. at 48 ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.").

At the summary judgment stage, the court must limit its analysis of material issues to the issues involved in the claims and causes of action that have been properly set forth in a pleading. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1200 (11th Cir. 2015) (holding that "plaintiffs may not raise new claims at the summary judgment stage") (internal quotation marks and citation omitted). Accordingly, when a plaintiff opposes a motion for summary judgment by identifying disputed issues of material fact, the only material factual issues to which she can refer are those included in her complaint. *Id*. If the plaintiff seeks to avoid summary judgment by relying on legal theories that are not set forth in her complaint, she must seek to amend her complaint to add the factual allegations necessary to support such theories. *Id*.

However, the Supreme Court clearly stated fifteen years ago that, "under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief

to a precise legal theory" and that "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530; 1291 (2011). Four years later, the Supreme Court reiterated that the federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (holding that a complaint need not expressly invoke a statutory section giving rise to a private right of action to state a claim). In so doing, the Supreme Court emphasized that Federal Rules "are designed to discourage battles over mere form of statement" and that Rule 8(a)(2) "indicates that a basic objective of the rules is to avoid civil cases turning on technicalities." *Id.*

That is not to say, of course, that the Federal Rules permit the invocation of alternative legal theories that do not depend upon facts alleged in the complaint. For example, in *White*, the plaintiff asserted a claim under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq*., ("FMLA"). *White,* 789 F.3d at 1190-91. According to the allegations in her complaint, the defendant, her employer, violated the FMLA by firing her when she sought leave after suffering a knee injury. *Id*. When opposing the defendant's motion for summary judgment, the plaintiff argued that, in addition to wrongfully denying leave, the defendant also violated the FMLA by failing to give its employees proper notice of their FMLA rights and by retaliating

against her for exercising her FMLA rights. *Id*. at 1200. This Court held that the plaintiff could not rely on the latter two legal theories as grounds for avoiding summary judgment because the minimal factual allegations in her three-page complaint pertained **only** to the denial of leave; and none of those allegations could have given the defendant any notice that there would be disputed issues of fact about its compliance with the FMLA's notice requirements or about retaliation against the plaintiff. *Id*.

**However**, *White* did not depart from Supreme Court authority, which clearly and expressly holds that a plaintiff's case is confined only by its factual allegations, not by the specific legal theories raised articulated by counsel in the complaint. *See Skinner*, 562 U.S. at 530; *Johnson*, 574 U.S. at 11. And yet, here, the district court concluded that Plaintiff had only asserted a viable cause of action under § 1692c because it was the only section of the FDCPA that was expressly cited in her Complaint. Summary Judgment Order [Dkt. No. 166] at 6. In this connection, the district court rejected Plaintiff's argument that she could prevail on claims under § 1692d or § 1692e. *Id*. ("The Complaint cannot be fairly read to allege counts under §§ 1692d-e, especially where the Complaint specifically names a different subsection."). This conclusion was erroneous, however, because the district court failed to correctly apply the principle that a plaintiff's complaint sufficiently sets forth a claim or cause of action whenever it alleges the factual basis for that claim

or cause of action, even if it does not expressly refer to the statutory provision from which the claim or causes of arises.

When viewed in its entirety, Plaintiff's Complaint alleges a set of facts showing that PRA violated the FDCPA in numerous ways by repeatedly trying to collect a debt from Plaintiff when she had no legal obligation for that debt. Plaintiff alleged that PRA, along with the other debt collector defendants, violated the FDCPA generally. Complaint [Dkt. No. 1] at ¶ 16 (citing 15 U.S.C. § 1692). More specifically, Plaintiff alleged facts that, if proven, would establish that, through telephone conversations with Plaintiff, PRA knew that she had insisted that the Synchrony Account did not belong to her and that it was the product of identity theft. *See id.* at ¶ 172 ("the Defendant Debt Collectors have actual and/or imputed notice that Plaintiff disputed the debt Midland, Portfolio and Trident were attempting to collect, when Plaintiff disputed the account by telephone directly with Midland, Portfolio and Trident.").

Contrary to the district court's conclusions, these factual allegations about PRA's conduct are sufficient to identify the issues of fact that would be relevant to causes of action under § 1692d or § 1692e. For any cause of action under the FDCPA, a plaintiff must establish three basic elements for all causes of action under the statute: "(1) he was an object of collection activity arising from consumer debt; (2) the defendant is a debt collector under the FDCPA; and (3) the defendant engaged in

activity the FDCPA prohibits." *Smith v. Univ. Cmty. Hosp., Inc*., No. 8:18-cv-270-T-AAS, 2019 WL 4194802, at *3 (M.D. Fla. Sep. 4, 2019) (citing *Goodin v. Bank of America, N.A*., 114 F. Supp. 3d 1197, 1204 (M.D. Fla. 2015)); *see also Kaplan v. Assetcare, Inc*., 88 F. Supp. 2d 1355, 1360 (S.D. Fla. 2000).

Numerous sections of the FDCPA describe what a plaintiff must show to establish the third element of an FDCPA claim: the "activity that the FDCPA prohibits." As this Court has recognized, several sections of the statute identify the different kinds of prohibited conduct, which generally involves "unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt . . . ." *Acosta v. Campbell*, 309 F. App'x 315, 319 (11th Cir. 2009) (citing 15 U.S.C. §§ 1692d, 1692e, 1692f). Thus, § 1692d begins by providing that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Section 1692d then goes on to describe six different examples of such prohibited conduct, but it also makes it clear that these specific examples are not the only kinds of harassing, oppressive, or abusive conduct that are prohibited. *See* 15 U.S.C. § 1692d ("Without limiting the general application of the foregoing, the following conduct is a violation of this section . . . ."). Section 1692e is structured in the same way. It sets forth a general description of the prohibited conduct: "[a] debt

collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Then it provides an explicitly non-exclusive list of sixteen examples of conduct that falls within its prohibition. *See* 15 U.S.C. § 1692e ("Without limiting the general application of the foregoing, the following conduct is a violation of this section . . . .").

Plaintiff's allegations about her experience with PRA and the other debt collector defendants fit within the general descriptions of prohibited conduct under § 1692d and § 1692e. When Plaintiff alleges facts showing that PRA continued its collection efforts even after Plaintiff had explained why the Synchrony Account did not belong to her, she described conduct that could be classified as harassing or oppressive. Similarly, when PRA made repeated collection efforts after being informed about the identity theft, it was effectively making a false or misleading statement about the extent of Plaintiff's responsibility for the Synchrony Account.

Because Plaintiff also alleged that the Synchrony Account was a consumer debt and that PRA was a debt collector, her allegations cover every element of a cause of action under either section. *See* Complaint at ¶ 42 (alleging that PRA is a debt collector); *see also id*. at ¶¶ 72, 112, 122, 129 (alleging facts indicating that the Synchrony Account was a consumer account). In this way, Plaintiff's Complaint alleged every material fact that was necessary for her to prevail on causes of action under either § 1692d or § 1692e. Consequently, the Complaint was sufficient to put

PRA on notice of all of the facts relevant to either of those causes of action, and it was not unfairly deprived of the opportunity to develop evidence relating to those facts. Even though Plaintiff did not explicitly cite § 1692d or § 1692e in her Complaint, she did allege all of the facts necessary to prove those theories.

These aspects of Plaintiff's Complaint distinguish this case from the authorities upon which the district court principally relied. In those cases, the legal theories asserted at the summary judgment stage were not grounded in the allegations of the plaintiff's complaint and required proof of specific facts that the plaintiff had never alleged.

The first of these cases was *Green Country Food Mkt., Inc. v. Bottling Grp., LLC*, 371 F.3d 1275 (10th Cir. 2004). There, the plaintiff's complaint invoked an Oklahoma antitrust statute that prohibited several distinct forms of conduct. *Id*. at 1279-80 (discussing 79 Okla. Stat. § 203 & 79 Okla. Stat. § 205). The prohibited acts included: (1) under § 203(A), "[e]very act, agreement, contract, or combination in the form of a trust, or otherwise, or conspiracy in restraint of trade or commerce within this state . . ."; (2) under § 203(B), "monopoliz[ing], attempt[ing] to monopolize, or conspire[ing] to monopolize any part of trade or commerce in a relevant market within this state"; and (3) under § 203(C), injuring competition through an unreasonable refusal by "any person in control of an essential facility . . . to give a competitor or customer of an entity" equal access to that facility. *See* 79

Okla. Stat. § 203. Another section of the statute created causes of action for private parties and the Oklahoma Attorney General. *See* 79 Okla. Stat. § 205.

The plaintiff's complaint alleged specific facts that pertained to the conduct identified in §§ 203(B) and 203(C), and it specifically cited those two subsections, along with § 205; but it did not cite § 203(A) and did not allege any specific conduct by the defendant that could be characterized as a unilateral act in restraint of trade. *Green Country*, 371 F.3d at 1279. The *Green Country* Court concluded that the plaintiff's failure to cite § 203(A) or to allege any facts specifically relevant to that subsection prevented the plaintiff from asserting a cause of action under § 203(A). To reach this conclusion, the court emphasized that the three statutory sections each involved fundamentally different kinds of conduct, pointing out that "[a] claim for unilateral acts in restraint of trade is sufficiently distinguishable from either a monopolization or an essential facilities claim that Plaintiffs should have mentioned the claim in the complaint." *Green Country*, 371 F.3d at 1280. The *Green Country* Court also concluded that, in light of the differences between the three statutory sections, "'[w]e cannot say that the incorrect statutory citation was an unimportant detail implicitly corrected by the facts alleged in the complaint.'" *Id*. at 1279 (quoting *Dunn v. Ewell (In re Santa Fe Downs)*, 611 F.2d 815, 816 (10th Cir.1980)).

The district court understood *Green Country* and *Dunn* to stand for the proposition that, in all cases, ***any*** "'incorrect statutory citation' is not an 'unimportant

34

detail' that can be 'implicitly corrected by the facts alleged in the complaint.'"

Summary Judgment Order [Dkt. No. 166] at 7 (quoting *Dunn*, 611 F.2d 815, 816).

But this is a misreading of those cases. As the *Green Country* Court pointed out, the

omission of a specific statutory citation from the complaint is only important and

problematic when the complaint lacks any allegation of the factual matters made

relevant by the uncited statute. By contrast, when the complaint does allege the facts

necessary to state a claim under the uncited statute, a complaint's omission of a

citation to that statute does not prevent the plaintiff from asserting a cause of action

under that statute.

In *Saintil v. Snap Recovery, Inc*., No. 0:24-60933-CIV, 2025 WL 3553605

(S.D. Fla. Oct. 7, 2025), the plaintiff sued a debt collector under the FDCPA, and her

complaint alleged that the debt collector failed to make the disclosures required by

§ 1692g(a). *Id*. at *3-4. When the evidence showed that the debt collector had, in

fact, sent the required disclosure to the plaintiff, it moved for summary judgment.

*Id*. at *2. In response, Plaintiff argued that summary judgment should be denied

because she had sufficient evidence to show that the debt collector violated § 1692e

and 15 U.S.C. § 1692f, which prohibits "unfair or unconscionable means to collect

or attempt to collect any debt." *Saintil*, 2025 WL 3553605 at *2.  The plaintiff also

insisted that she had evidence to prove that the debt collector violated 12 C.F.R. §

1006.34, which requires debt collectors to provide validation of the debt upon

request. *Id*. at *2. The district court granted summary judgment to the debt collector, ruling that the plaintiff's alternative theories under the FDCPA were not grounded in any facts alleged in the complaint and therefore could not be raised as grounds for avoiding summary judgment. *Id*. at *4-5. Thus, as in *Green Country*, the crucial question was not whether the complaint contained a particular statutory citation; the crucial question was whether the complaint included the factual allegations necessary to make out a cause of action under that specific statute.

Given these authorities, Plaintiff's Complaint did more than enough to put PRA on notice of specific instances of its conducted that were prohibited by different provisions of the FDCPA. This is all that she was required to do, and the district court erred by imposing a more exacting and unnecessarily restrictive pleading standard upon her Complaint.

**II. The district court erred in concluding that Plaintiff lacked sufficient evidence to permit a reasonable jury to find that PRA's conduct violated § 1692d, § 1692e, and/or § 1692f because PRA engaged in the kind of conduct prohibited by those sections when it repeatedly tried to collect from Plaintiff after learning that her association with the Synchrony Account was the product of identity theft.**

As noted above, a plaintiff must allege and prove three basic elements for any cause of action under the FDCPA: (1) that she was subject to collection activity arising from consumer debt; (2) that the defendant is a debt collector within the meaning of the FDCPA; and (3) the defendant engaged in conduct prohibited by one

or more sections of the statute. *See Smith*, 2019 WL 4194802, at *3. The summary judgment record includes evidence and undisputed facts that establish all three of these elements.

A.    *The Synchrony Account was a consumer debt for the purposes of the FDCPA.*

Although the district court never addressed the question whether the Synchrony Account reflected a consumer debt, the parties did address this question in their summary judgment briefing. See PRA's Amended Motion for Summary Judgment [Dkt. No. 142] at 5-9; Reply in Support of Plaintiff's Motion for Partial Summary Judgment [Dkt. No. 165] at 4-6. As Plaintiff argued in the district court, an FDCPA plaintiff has a relatively light burden to establish this element and may rely upon circumstantial evidence to show that the subject debt was the kind of consumer debt covered by the statute. There is more than enough circumstantial evidence about the Synchrony Account in the summary judgment record to satisfy Plaintiff's burden for showing that it was the kind of debt that is covered by the FDCPA.

"[T]he FDCPA 'was intended to apply only to debts contracted by consumers.'" *Conboy v. United States Small Bus. Admin.*, 992 F.3d 153, 157 (3d Cir. 2021) (quoting *Staub v. Harris*, 626 F.2d 275, 278 (3d Cir. 1980)). Accordingly, it defines "debt" as "any obligation or alleged obligation of a consumer to pay money

arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes…" 15 U.S.C. § 1692a(5). Because the statute expressly covers "alleged obligation[s]," an identity-theft victim may invoke the FDCPA where a debt collector attempts to collect a purported consumer obligation that does not in fact belong to her. *See Parham v. Seattle Serv. Bureau, Inc.*, 656 F. App'x 474, 477 (11th Cir. 2016) ("The FDCPA specifies that the consumer debt sought to be collected need not actually exist for the debt collector to be bound by the FDCPA's requirements.") But even an "alleged obligation" is covered by the FDCPA only when it arises out of a "transaction" where "the subject of the transaction" is "primarily for personal, family, or household purposes." *Id*. (citing *Hawthorne v. Mac Adjustment, Inc*., 140 F.3d 1367, 1371 (11th Cir. 1998)).

When determining whether a debt is the product of a transaction undertaken for personal, family, or household purposes, a court is not restricted to considering only the specific intentions of the individuals who engaged in the transaction. *See Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296, 1305-06 (S.D. Fla. 2016). Although those individual intentions are important, the court must examine all the circumstances surrounding the transaction from which the debt arose. *See id*. (citing *Bloom v. I.C. Sys., Inc*., 972 F.2d 1067, 1068–69 (9th Cir.1992), *Hepsen v. J.C. Christensen & Assocs., Inc.*, No. 8:07–cv–1935, 2009 WL 3064865, at *3 (M.D.Fla.

Sept. 22, 2009), and *Hansen v. Ticket Track, Inc*., 280 F.Supp.2d 1196, 1204-05 (W.D.Wash. July 21, 2003)).

This Court's decision in *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833 (11th Cir. 2010) is consistent with the proposition that circumstantial evidence can be used to determine whether a debt was created for personal, family, or household purposes. There, the plaintiff sold his personal computer over Craigslist, an online marketplace. The plaintiff required the buyer to pay the purchase price into the plaintiff's PayPal account. The plaintiff withdrew the funds from the account, depositing them into his personal bank account. *Id*. at 835-36. Later, PayPal informed him that the buyer's payment was fraudulent, and it exercised its contractual right to seek to claw back the funds from the transaction. *Id*. When the plaintiff refused to return the funds, PayPal treated the deficiency as a debt and contracted with a debt collector to recover those funds from the plaintiff. *Id*. When the plaintiff sued the debt collector under the FDCPA, there was a question about whether the funds from the laptop sale were the product of a commercial transaction or a transaction that was primarily for personal, family, or household purposes. *Id*. at 838-39. This Court concluded that the plaintiff sufficiently established those purposes of the laptop sale transaction with evidence about certain circumstances of the transaction, not only with direct evidence about the plaintiff's intentions. *Id*. Thus, the court concluded that the purpose of the transaction could be established by

evidence showing that the transaction involved his personal computer, that his PayPal account was specifically registered as a "personal account," and that he ultimately deposited the sale proceeds into his personal bank account. *Id*.

Other courts have followed *Oppenheim*'s consideration of circumstantial evidence to prove the purpose behind an account, and such consideration is especially important in cases where the alleged debt is the product of identity theft. In *Martin*, the district court noted that "a victim of identity theft or mistaken identity need not present evidence of the intent or purpose of an unknown person in entering the transaction, but should present evidence of the identity theft or mistaken identity along with *some* evidence showing that the debt is consumer in nature." *Martin*, 192 F. Supp. 3d at 1306 (emphasis in original). Courts have relied upon such circumstantial evidence of the purpose for a transaction, even when the plaintiff has not been the victim of identity theft but simply cannot remember the specific transaction that gave rise to the debt. In *Hepsen*, the plaintiff could not remember his purchase, but the evidence showed that the purchase was made with his personal credit card, not with the business-related credit card account that he used for business transactions. *Hepsen*, 2009 WL 3064865, at *3; *see also Hansen*, 280 F.Supp.2d at 1204-05 (concluding that the plaintiffs sufficiently established that a transaction for parking charges was for personal, family, or household purposes when they paid the charges with personal funds).

Here, the undisputed record evidence demonstrates that the debt associated with the Synchrony Account was undertaken for personal, family, or household purposes. PRA's corporate representative confirmed that the account "was a Lowe's credit card that was issued by Synchrony Bank, and it showed basic purchases or transactions made at a Lowe's store." Deposition of PRA's Corporate Representative [Dkt. No. 148-01] at 31:7-9. The card at issue was a retail consumer store card offered by Lowe's in partnership with Synchrony Bank, and PRA had no evidence to show that it was one of Lowe's multiple available "business" or "commercial account" credit cards. Indeed, Plaintiff's credit report lists the Synchrony account in her **consumer** tradelines alongside other personal accounts. *See* Plaintiff's Credit Report [Dkt. No. 155-01]. And PRA is a self-described collector of consumer-type debts. Private-label retail cards like the Synchrony card are marketed to individuals for personal shopping and household purchases and PRA has offered no evidence that this account was part of a commercial program, a corporate line of credit, or any other non-consumer product. Taken together, Plaintiff's circumstantial evidence and PRA's failure to rebut that evidence are enough to show that the Synchrony Account involved consumer debt. *Martin*, 192 F. Supp. at 1306.

//

B. *PRA is a debt collector within the meaning of the FDCPA.*

In relevant part, the FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). PRA did not dispute that it meets this definition of "debt collector." Plaintiff's SMF at ¶ 2; PRA's Responsive SMF at ¶ 2.

C. *The evidence and the undisputed facts are sufficient to show that PRA engaged in prohibited conduct in connection with the Synchrony Account.*

Plaintiff alleged certain basic facts about PRA's collection efforts, which PRA did not dispute, and these facts are enough to demonstrate that PRA engaged in the kind of conduct prohibited by the FDCPA. When concluding that Plaintiff could not possibly prove that PRA engaged in any prohibited activity, the district court conducted a cursory analysis and relied upon inapposite authority. These analytic deficiencies demonstrate how and why the district court erred on this issue.

The most salient facts about PRA's collection efforts are undisputed. PRA made its first collection attempt for the Synchrony Account by telephoning Plaintiff on April 5, 2023.  Plaintiff's SMF at ¶¶ 14-15; PRA's Responsive SMF at ¶¶ 14-15. There is no dispute that, during the April 5 telephone conversation with PRA's representative, Plaintiff informed PRA the Synchrony Account did not belong to her

and was the product of identity theft. *See id*. Despite Plaintiff's unequivocal statement that she had no responsibility for the Synchrony Account, PRA kept contacting her. Less than two weeks after learning that Plaintiff was the victim of identity theft, on April 17, 2023, PRA made a second collection call to Plaintiff. Plaintiff's SMF at ¶¶ 16-17; PRA's Responsive SMF at ¶¶ 16-17. As she did in response to PRA's first call, Plaintiff notified PRA that Synchrony Bank account did not belong to her. *Id*. Nevertheless, PRA continued to contact Plaintiff in an effort to collect the amount owed on the Synchrony Account. *See* Plaintiff's SMF at ¶ 18; PRA's Responsive SMF at ¶ 18.

PRA does not deny that it made numerous collection calls to Plaintiff even after it knew that the Synchrony Account was the product of identity theft and that Plaintiff had disclaimed any liability for it. *See* PRA's Responsive SMF at ¶ 18. PRA denied that its phone calls were harassing, but it made no effort to rebut Plaintiff's assertion that PRA contacted her multiple times after its first two collection calls. *See id*. In light of PRA's tacit admissions, the district court concluded that there was no dispute about the fact that PRA made more than two collection calls to Plaintiff, while also concluding that the precise number of such attempts was the subject of a dispute. Summary Judgment Order [Dkt. No. 166] at 2 & n.1. The district court also indicated that the record supported Plaintiff's contention that PRA "contacted

Plaintiff at least seven times after being verbally notified that Plaintiff was a victim of identity fraud." Summary Judgment Order at 8.

These facts fit the definition of prohibited conduct under § 1692d. As noted above, § 1692d generally prohibits any collection efforts that can be deemed harassing, oppressive, or abusive. This Court has held that "[o]rdinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury." *Jeter v. Credit Bureau, Inc*., 760 F.2d 1168, 1179 (11th Cir.1985). A jury can find that a debt collector has violated this prohibition when it finds that the debt collector infringes on the consumer's statutory right "to be treated in a reasonable or civil manner." *Meadows v. Franklin Collection Serv., Inc*., 414 F. App'x 230, 233 (11th Cir. 2011) (citing *Jeter*, 760 F.2d at 1178). The *Meadows* Court also identified an important factor in determining when a debt collector's conduct infringes on the consumers rights in this manner: whether the debt collector knew that it was directing its collection efforts at a consumer who was not the person who owed the debt. *Meadows*, 414 F. App'x at 234. In *Meadows*, the plaintiff told the debt collector that she was not the debtor and that the debtor could not be found at her phone number. *Id*. Nevertheless, the debt collector continued to call the plaintiff, seeking to collect from her. *Id*. Although the district court in *Meadows* granted summary judgment, concluding that the debt collector's conduct had not been harassing, this Court reversed, concluding that there was a jury question on that issue. *Id*. at 233-34. In

explaining its decision, this Court indicated that a jury could find that it was harassing for a debt collector to make persistent collection efforts from a person who disclaimed any relationship to the debt at issue. *Id*.

Persistent collection efforts can also be harassing even when the debt collector is contacting the correct consumer. In *Brown v. Credit Mgmt., LP*, 131 F. Supp. 3d 1332 (N.D. Ga. 2015), a Georgia district court denied a debt collector's motion for summary judgment on the plaintiff's claim under § 1692d, concluding that the facts presented a jury question about whether the debt collectors repeated phone calls were harassing. Those facts showed that, in response to one of the debt collector's calls, the plaintiff expressly told the debt collector that she had no income, that her husband was in jail, and that she had no way to pay the debt, even on an installment payment plan. *Id*. at 1335-36. Nevertheless, the debt collector continued its collection efforts, making more phone calls. *Id*. The district court concluded that "[o]n these facts, a reasonable jury could find Defendant knew or should have known that its continued calls would be annoying, abusive, or harassing." *Id*. at 1341.

The district court here concluded that no reasonable jury could find that PRA's collection efforts were harassing because contacting Plaintiff "at least seven times after being verbally notified that Plaintiff was a victim of identity fraud, does not by itself amount to an intent to harass." Summary Judgment Order at 8. In this connection, the district court cited cases where the courts had considered the number

and frequency of collection calls as the principal index for determining harassment. *Id*. at 8-9 (citing cases). But the frequency or number of collection calls is not always dispositive of whether the calls are harassing. As the *Brown* Court noted, "under certain circumstances, courts have found that even a minimal number of calls was sufficient to support the consumer's harassment claim." *Brown*, 131 F. Supp. 3d at 1341 (citing cases).

Here, as in *Meadows* and *Brown*, the crucial factor is PRA's persistence in making collection calls after learning that the consumer had no obligation or ability to pay. It is not solely the number of calls that demonstrates the PRA's intention to harass; it is the repeated effort to make collection calls while knowing that Plaintiff had no legal obligation to pay. The district court here erred by focusing exclusively on the number of calls and by not considering the totality of the circumstances surrounding those calls.

The undisputed facts would also permit a reasonable jury to find that PRA engaged in the kind of conduct prohibited by § 1692e and/or § 1692f. Section 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692f prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

//

A debt collector engages in a misleading, deceptive or unfair collection practice when it insists that a consumer owes a debt while the consumer's liability for the debt is still an unresolved legal issue. *See Gostony v. Diem Corp.*, 320 F. Supp. 2d 932 (D. Ariz. 2003). In that case, a landlord assessed an apartment cleaning fee against a tenant after the tenant had moved out. *Id*. at 934. When the tenant failed to pay the fee, the landlord retained a debt collector who sought to collect both the cleaning fee and a "collection fee" equal to 40% of the cleaning fee. *Id*. at 936. According to the lease, the landlord had the right to impose such a collection fee, but only if it was the "prevailing party" in litigation over the cleaning fee. *Id*. The tenant sued the debt collector under the FDCPA, claiming that, among other things, the debt collector's demand for the collection fee violated § 1692e and/or § 1692f because the tenant's liability for the collection fee would only arise in the event of litigation and after the resolution certain legal issues. In the tenant's view, because the legal issues were unresolved, she was not actually liable for the collection fee when the debt collector attempted to collect it. The *Gostony* Court granted summary judgment to the Plaintiff under § 1692f and indicated that there was a factual issue about whether the premature demand for the collection fee violated § 1692e. *See id*. at 937 (granting partial summary judgment to the plaintiff); *see also id*. at 947 (denying the defendant's cross-motion for summary judgment).

//

The decision in *Gostony* applies here because PRA repeatedly attempted to collect from Plaintiff for the Synchrony Account even though PRA knew that, in light of the allegations of identity theft, there were, at the very least, unresolved legal questions about Plaintiff's liability for that account. Simply stated, PRA tried to collect a debt from Plaintiff before it knew that she actually owed the debt, and such conduct can support a jury finding that a collector has violated the FDCPA's prohibitions on deceptive or unfair collection practices.

## CONCLUSION AND RELIEF REQUESTED

The FDCPA prohibits harassing, deceptive, and unfair conduct in the collection of consumer debt. Plaintiff alleged specific facts showing that PRA persistently attempted to collect a debt from her when it knew that she disclaimed any obligation to pay because the debt was the product of identity theft. Because these allegations involve conduct that can be characterized as harassing, deceptive, or unfair, Plaintiff gave PRA adequate notice that she had claims under multiple subsections of the FDCPA, including § 1692d, § 1692e, and/or § 1692f; and this is all that she was required to do to sufficiently assert those claims. Moreover, because the undisputed facts in the summary judgment record conform to Plaintiffs' allegations, Plaintiff has, at the very least, done enough to create material questions of fact about whether PRA violated the FDCPA. For these reasons, the district court

erred by granting summary judgment to PRA, and Plaintiff asks this Court to vacate and/or reverse that ruling.

Dated: February 18, 2026

*/s/ Tarek N. Chami*
Tarek N. Chami
**CONSUMER JUSTICE LAW FIRM**
835 Mason St, Suite C349
Dearborn, MI 48124
T: (313) 447-0488
E: tchami@consumerjustice.com

Catherine Tillman, FL #0057663
**CONSUMER JUSTICE LAW FIRM**
8095 N. 85th Way
Scottsdale, Arizona 85258
T: (941) 263-7310
E: ctillman@consumerjustice.com

*Attorneys for Plaintiff-Appellant*
*Maria Antonieta Galdames Burce*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

**1.    Type-Volume**

This document complies with the word limit of FRAP 32(f) because, excluding the parts of the document exempted by FRAP 32(f) and 11th Cir. R. 32-4, this document contains 9,600 words.

**2.    Typeface and Type-Style**

This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

Dated: February 18, 2026        */s/ Tarek N. Chami*
Tarek N. Chami
**CONSUMER JUSTICE LAW FIRM**
835 Mason St, Suite C349
Dearborn, MI 48124
T: (313) 447-0488
E: tchami@consumerjustice.com

Catherine Tillman, FL #0057663
**CONSUMER JUSTICE LAW FIRM**
8095 N. 85th Way
Scottsdale, Arizona 85258
T: (941) 263-7310
E: ctillman@consumerjustice.com

*Attorneys for Appellant*
*Maria Antoneta Galdames Burce*

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2026, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. I certify that all participants in this case are registered CM/ECF users, or that I will accomplish service by U.S. Mail for those participants that are not registered CM/ECF users.

*/s/ Tarek N. Chami*
Tarek N. Chami

*Counsel for Appellant*